We have six cases on the calendar this morning. Two patent cases from the PTAB, one from a district court, an appeal from the Armed Services Board of Contract Appeals, a case from the Federal Claims on Military Pay, and an employee case from the Merit Systems Protection Board. The last two are being submitted on the briefs and will not be argued. First case is Microsoft v. Enfish, 2015, 1734 at Al. There's a lot of Al there. Several cases here. Mr. Campbell. Good morning. May it please the Court, Chad Campbell here along with my colleague Theodore Wimsett representing Microsoft. I propose to begin with Claim 32 and the Board's decision with respect to why it concluded Microsoft's evidence was not sufficient to claim. I'm starting at the Record Appendix A27. In the first full paragraph on that page, the Board indicates that they conclude that the evidence provided by Microsoft is not sufficient, including primary key column information from SysColumns table is not persuasive because it does not explain how OID determination by text searching as recited in Claim 32 would be conducted. Claim 32 does not recite text searching. It recites text entry. That was just a mistake of claim scope by the Board and it affected the way it analyzed the claim. The argument that is made as it relates to Claim 32, at least the initial argument that Enfish makes, is that you actually never argued to the Board in exactly the same way that you argued here. Did you ever actually mention user queries in your argument to the Board? We had two arguments that we presented to the Board. The first one was based on the index information in SysColumns table or in the SysTables table. We also had a separate item that we pointed the Board to and that was the fact that the OIDs that were determined in connection with Claim 31 are stored as primary key information in both the SysColumns table and the SysTables table and the storage of that information as primary key information was sufficient to be information in a column that's defined that would permit the OIDs to be determined. I don't think you're really answering my question, but the focus of all of your argument below had to do with searching, right? Not entry. It's true that we did talk a lot about searching. I'm not disputing that. However, the claim requirement doesn't require searching. It requires text entry, and the searching we were talking about begins with text entry. So the question becomes, if you're going to interact with Chang at all, you've got to have text entry. Is there information that's defined to be presented and contained in a column that will enable the determination of an OID when you do enter text? And the answer there is yes. In the patent, there is a description of both searching type information that would be stored in a column, but also the OIDs themselves being stored in a column. And the patent teaches in various places that when you enter text to create a row or to add a column, that you would end up with the determination of the OID and the storage of the OID in the column that's meant for it. For example, if we look... But did you even talk about the SIS columns as it relates to Claim 32? We did. Where? I couldn't find it. Yes, as to Claim 31. Okay. So if we begin at A220 in our petition, we pointed out at the bottom paragraph that the SIS columns table is shown in Chang's Figure 3, and then we said that the SIS tables table is shown in Chang's Figure 2. As detailed below and taught by Chang, each table, both of them, each of them separately, satisfies the elements of Claims 1, 2, 31, and 32. We went on, when we talked specifically about Claim 32, to point out, for example, on A234, that Chang stores the column information in the SIS columns table, the definition of which is also stored in the PAC Descriptor PD of the SIS tables table, Figure 2. So we did point to both the SIS columns table and the SIS tables table as alternative ways in which you could find columns that were defined to hold information that would permit the determination of OIDs from text entry. Mr. Campbell, maybe you want to move on to one of the other issues? You've raised a lot of issues, and you have a quite limited amount of time. Thank you, Your Honor. Let me, if I could, just briefly move to Claims 55, 56, and 60. These claims... These are the indexing claims? Yes, they are. And they don't involve the self-referentiality property of the rescuer? They do not. So as I understand what the Board said on those, it said, all you said in your petition, and all that Dr. Hosking said, was these two references are in the same area, field, space. It doesn't matter what the word is. What you didn't do, I think the Board said, was to say, if a skilled artisan was looking at Visual Basic, the skilled artisan would have some reason identifying we could do better. There's a problem here to look elsewhere, and that crucial bridge between Visual Basic and Salton is what you just didn't have evidence of. Why was that unreasonable reading of the evidence? For the following reason. The bridge that we provided and talked about to the Board can be seen if you look at how the Board treated the discussion of Claim 54, which is the independent claim from which these others depend, followed by the identification for Claim 55, for example, of the specific teachings that Salton provided. If you look at page A1659 of Dr. Hosking's declaration, 1659, at the very top, in paragraph 450, he points out that Visual Basic, which is a software program that programmers were going to use, discloses an index record called an index object. Then in paragraph 451, he goes on to point out that it has the capability, Visual Basic has the capability of using the index record to locate records according to a keyword. Now, it is a programmer's tool, and therefore you have to put something into the program in order to use it. He points out that those details about what you would put into it can be found in a number of places, but Salton's one of them. And in Salton in 452, he points out that virtually every commercial system available is based on an inverted file design. An inverted file design is another name for a keyword index, where you go through and you pick out important words and then create records where you line up all the places where you can find that word. So, Salton teaches how to do that, a very simple keyword index, and then he goes on and points out that if you had a program like Visual Basic, where you have to put something into the index to make it work, it would be natural to go look at a textbook like Salton that taught details about what you would put in there. And so the two together, the fact that you've got a program that in order to use has to be filled with something, very specific teachings in Salton about what to do, and the fact that you have a known system being used exactly as it has been used widely, this idea of keyword indexing, is the bridge that gives us the common sense hook to put those two together. And where in the record did you make this precise argument to the fore? So in A1659, that's Dr. Hosking's report. Okay, I understand that it's in the doctor's report, but the only place I could find your even discussion of this motivation to combine was in your petition, not in any of your briefs, and in there it was very conclusory. So we would submit that in fairness, you need to read both what we said about the independent Claim 54 and Claim 55. When we get to Claim 55 expressly, after we've already explained the indexing capability of Visual Basic in Claim 54, we point out at appendix page A318 that Visual Basic includes this idea of being able to search for keys, and then we point specifically to the Salton teaching about index structures. We point to the figure that Dr. Hosking was discussing, figure 1-10, which teaches how to use a keyword index, and then we point out that you've got a program, a teaching of what to put in the program, the two go together naturally. What is your response to M. Fish's argument that Salton taught away? I know that you didn't respond to that below. What's your response now? Salton taught many things. It was a textbook. It taught full-text indexing, in other words, every word, and it also taught more limited keyword indexing. We relied on the more limited keyword indexing, not the bigger full-text indexing. The patent at column 13 recognizes that those two things are different. Well, Claim 55 requires full-text indexing, doesn't it? It requires keywords, keyword indexing. If we look at column 13 of the patent, it very clearly goes through and talks first about full-text extraction at line 45 of column 13, and then points out that there are other types of extraction, both automatic and manual, and so the idea of more limited keyword extraction being different from full-text extraction is taught in the 604 patent, and it's also taught in Salton. We were relying upon the more limited one, so there isn't a teaching away. I see that I'm into my rebuttal. We will stay before you. Thank you. Mr. Rahman? Good morning, and may it please the Court. I intend to speak briefly on the issues raised in Microsoft's appeal and spend most of my time on MFISH's cross-appeal concerning the construction of object identification number, or OID. There's an overriding issue that wasn't addressed by Microsoft in its argument, and that's the MFISH 1 claim construction. In case 2015-1244, which I'll refer to as MFISH 1, this Court did claim construction. Claim construction is binding on this panel, according to this Court's precedence, and the Court construed the term a logical table. A logical table is a phrase that appears in each of the claims. Can I just double-check? That was a case coming from district court? Yes, Your Honor. So Phillips governed that one, and Phillips does not govern this one, right? Your Honor, there was a very recent case, a precedential decision from this Court, In Re CSB International, that holds that patents as these have, that have expired during the process, are construed under the Phillips standard, even if they were addressed under the broadest reasonable interpretation standard before the Board. The MFISH patents at issue here expired several months after the final written decisions were entered by the Patent Trial Appeal Board. The Court construed the phrase a logical table, and emphasis on a. It said that the specification makes clear that the invention is directed to the arrangement of a single logical table. That construction affirmed the Board's finding that Microsoft's invalidity proofs were inadequate if they did not contain all of the recited structures in a single table. So the Court should affirm as to claims 32, 36, 42, and 43 solely based upon the MFISH 1 claim construction, because that agrees with the Board's finding of the single table requirement, and that was the Board's primary basis for finding that the invalidity proofs failed. Even if we agreed with you as to some of those claims, Microsoft is arguing that as to claim 32, that they are pointing to a single table. Your Honor, I can only point to the Board's fact findings on that issue. The Board specifically in its final written decisions pointed to Dr. Hosking's, and this is Microsoft's expert, his admission, it's at A1361, in which the Board concluded that Dr. Hosking admitted on cross-examination that he could not point to any single table in Chang that allowed determination of OIDs via text entry. The Board also made another fact finding in its final written decisions, and this is at A1363, that Microsoft had a failure of proof on this issue because there were gaps in Chang's disclosure, and Microsoft had never filled in the gaps adequately. Finally, briefly, with respect to the searching claim construction issue, we would submit that the Board simply responded to and addressed the arguments that Microsoft presented. All of the arguments presented concerning the determination of OIDs via text entry presented to the Board and to this Court are based on querying or searching. As this Court observed in In Re. Baxter International, it said, unsurprisingly, the Board only addressed Baxter's arguments and the others were waived. We have the same situation here, where the arguments that the Board addressed were in the context of searching. There's no express holding by the Board that searching is required. Can you address the indexing claims? Why is Microsoft wrong in saying, based on 1659 and so on, Hosking's declaration, that somebody skilled artisan reading Visual Basic would know, well, I still have some work to do to implement this, and what I would do is go and look around for something as fundamental as Salton's manual to implement, and that provides the motivation to go and look at Salton. The common sense argument that's articulated here was not squarely presented to the Board, so the Board did not consider a common sense argument. Second, the Board made fact findings, and the question for this Court is whether there's substantial evidence to support those findings, and it found specifically that Salton taught away, in particular because of the fact finding concerning how it was expensive and rarely possible to fold text. What page are you referring to? Your Honor, I don't have a page cite to either the final written decision or the briefing on that. I'll look for it, and may be able to respond on that when I stand back up and rebuttal. I'd like to turn to the claim construction for object identification number. There's two important aspects of the object identification number in the appealed claims. First, the term is object identification number, or OID, and in every appealed claim, the claim states that the object identification number is to identify. Did you argue to the Board that there was a difference between its use of the word define and your preferred term, identify? Your Honor, we consistently argued that the construction should include identify and disagreed with the Board. There is not extensive briefing on the difference, but we certainly are on record explaining why identify is the correct term. The Board, in our view, viewed define and identify as interchangeable terms akin to cease and desist, or null and void. Viewing those terms as interchangeable would be error here for a number of reasons. Did you say to the Board, oh, wait a minute, you're really quite wrong about that. These two terms are not interchangeable. We have among our, I forget what the term was you used, something like quibbles or tweaks or something like that after the institution decision that said we want to, we think you need to clarify, amend, elaborate. I don't recall reading anything in which you said one of the ways you should change this is to swap out the word define and put in the word identify. Your Honor, we urged that position by consistently pressing for our proposed construction all the way to the end of the process. Right, but your proposed construction, I mean, you had three different points that uniqueness, immutable, and system generated. You even had separate sections in your brief to address those things. How does focusing on those things equate to swapping out identify and define? If you turn to Claim 31 or Claim 41, your Honor, you'll see that the claims use object identification number to identify. They also refer to rows that define columns. The board, by construing OID as an array of bits that defines, effectively read out the identification limitation in the claims. Not only impermissibly broadening the claims, but also as a practical matter, breaking the structure of the claimed logical table. It can only be self-referential if the object identification number is an identifier that allows a row to define a column by sharing the same OID. When the board misconstrued OID as a definer and removed the identifier limitation, the practical effect was that the board then looked anywhere in an alleged row defining a column, in sys columns for example, said any information that would define that column could be an OID. Remember that these claims are computer operations. They're computer operation claims. And the question as to Chang's anticipation was whether the system had assigned a value as an identifier for a row or a column. Not whether any definitional information might be found somewhere in a row, but that was the effect of the board's construction. I'd also like to briefly touch on, before I leave identify, I think it is important to note that Microsoft agrees that the construction of OID should include identify. They argue that it's harmless error that the board misconstrued the term. As I explained, not only because the claims use identify and define, for example in claims 31 and 41, but also because of the express claim language, taking out identify and replacing it with define dramatically changed the meaning of the claims. Microsoft also agrees with Enfish regarding the requirement that uniqueness should be an aspect of the construction of OID. How can it be the case given, what is it, figure three, where there's a row and there's a column with the same OID, that every object has to have a unique OID? Your Honor, the figure… A column object and a row object, they have the same OID in the patent. Yes, and this is in the red brief at nine. You can find figure three there. Your Honor, our interpretation of figure three is that column 126 with OID 1019 and row 136, also with OID 1019, are the same database object. There is a unity or an identity there. They are identified by the same OID for the very important reason in these claims. As far as I recall, the patent does not actually say that, and the requirement in the claim is that the row with OID 1019 merely has to correspond to the column with OID 136 and 126, right? They don't actually have to be identical, and one would think that if they don't have to be identical, whatever else they are, they're not the same object, and the patent doesn't say for these purposes, these are the same object. The words correspond are used. The effect from a technical standpoint is identity, because the same identifier is used in both places. You have identity. The board in the 559 case did address this dispute between Microsoft and ENFISH. That's at A102 to 103. The board agreed with ENFISH that to the extent such an OID is unique between the column and row, that we are persuaded that it's unique to every row and column, as ENFISH asserts. It's also notable that Dr. Hosking agreed at A98. But again, that agreement only relates to each individual column. It doesn't talk about database-wide, does it? Your Honor, that's our interpretation. It does not speak to database-wide. However, I'd submit that because in Chang, neither the column name or column number would be uniquely represented in rows, that even under Microsoft's local uniqueness interpretation, none of Chang's disclosures would satisfy the uniqueness requirement as to the rows. Can I ask? I had, I guess, been under the impression at A103 that there's a typo there, that what the board was saying is we are not persuaded that it is unique to every row and column. How does this make sense otherwise? This is all about how they're rejecting your position of uniqueness as between rows and columns. Is that just not a – is there just not a missing knot in there? Your Honor, I didn't read it that way. We read it as the board agreeing with our interpretation of the identity of the row and column. Even though this is in the context of saying, look, the row and the column, they have the same OID. You cannot possibly have uniqueness in the sense you're arguing for. We didn't interpret it that way. I'll reserve my remaining time for a vote. Mr. Ahman, you mentioned that you would provide a citation when you come back. When you come back, you can provide the citation, but no argument because it relates to the main appeal. Mr. Campbell. If I could briefly, just to clarify and sharpen up on what our position is with respect to the construction of OID. We don't think that the board made a mistake that requires any adjustment by the panel here today. The construction of OID was the construction of just one term. It wasn't the construction of a whole phrase in any of the elements of the claim. So what the board did is they said OID means they looked at a portion of the patent that talked about OIDs defining rows and columns, and another portion of the patent that talked about OIDs being bid arrays, and they put those two together and said, for this term, OID, we're going to have this construction that the OIDs are bid arrays that define. The board didn't ignore the rest of the claim language. Each of the claims require that you have an OID that identifies rows and OIDs that identify columns. If we look at what the board said on A18 of its decision, they point out in the last sentence there that each of the independent claims recites that an OID is included, quote, to identify, close quote, each logical row and each logical column. So the board was applying that identification requirement, not ignoring it. If we go and look at how they applied it to Chang, the reference that anticipated Claim 31 in the board's view at page A23, the first full sentence there at the top of the page says, also, Chang discloses, in accordance with our construction, that each database table includes column and row identifiers, such as record ID, column numbers, or column names, comporting with the proper interpretation of an OID as an array of bits that define a column. So we disagree with the idea that the board was ignoring the requirement that's stated in the claim that an OID needs to identify. They applied it both in their claims construction analysis and also when they went to apply that construed language to the prior art that was before them. Can I ask you this pesky little question? Do you think that there's a missing not in that sentence that says we are persuaded that it is unique? We do, Your Honor, and the reason for that is based in part on what happened at the hearing. There was an extended discussion that took place between council and the board in which we were discussing column three, or figure three, rather, and the fact that you have a column and a row that both have the same OID. Those two, the row and the column, do not, according to the patent, actually have to have identical content, right? Correct, and they don't in the figure. Right. So we don't think that there is a way to have a universal uniqueness requirement and make sense of the intrinsic record. And with respect to the other things that EnFISH is trying to add to the construction of OID, the board, for example, with the immutability requirement that they're proposing, actually found that their extrinsic evidence wasn't persuasive. That's a finding that needs to be deferred to, and with respect to system generation, there's been a pivot on appeal to a disavowal argument, and we would submit that there is not a basis for disavowal. I see that I'm out of time. All right. Thank you. Thank you, Mr. Campbell. Mr. Rahman can reply on the cross-page OID. Your Honor, first, the site I was unable to provide earlier, A156 to A157. Thank you. The board's error in confusing define and identify becomes apparent when you look at the final written decisions because the board's language reveals that although it uses the words identify and define, first of all, it said that it applied its construction of define in reaching its decisions. Second, there's no finding by the board that Chang discloses assigning the column number or column name as the identifier for a row. Instead, that, of course, would have been required if a column number or column name was actually the system identifier for the row. Instead, the board found that that information was definitional information that could be found somewhere in a row in sys columns. That definitional approach allowed the board to avoid the real question, which is whether the system identified that entire row with an OID that had been assigned based upon column name or number. That teaching is not present. And I see I'm out of time. Thank you, Mr. Rahman. We'll take the case under advisement.